UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA GREENE,

        Plaintiff,

                              Case No. 12-11631

vs.                                HON. GERSHWIN A. DRAIN

ERIC K. SHINSEKI, Secretary of
Veterans Affairs
        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT [#50] AND DISMISSING PLAINTIFF'S COMPLAINT

### I.   Introduction

On April 10, 2012, Plaintiff Sonya Greene filed a Complaint with this Court. Her Complaint contains two counts, Hostile Work Environment and Retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff is a registered nurse who works in the in-patient psychiatric unit in the Veterans Administration Hospital in Detroit, Michigan ("the Hospital"). Plaintiff worked at the Hospital from May 2008 until her termination in December of 2011. Defendant alleges the reason the Hospital terminated Plaintiff was because of patient complaints that began in 2009 and an AWOL incident. Plaintiff alleges that the management at the Hospital created a hostile work environment for her because of her gender and retaliated against her for engaging in protected activity.

On September 16, 2013, Defendant filed an Amended Motion for Summary Judgment [#50] alleging Plaintiff's claims fails and he is entitled to judgment as a matter of law on both claims. Both parties have fully briefed the Motion and the Court heard arguments on the motion on December 18, 2013. For the reasons that follow, the Court GRANTS Defendant's Motion [#50].

## II.  Factual Background

Plaintiff began working for Defendant in 2008. Marla Gresham ("Gresham") was her immediate supervisor. (Def.'s Ex. 3 at 12.) Plaintiff and Gresham also had a friendship outside of work. (Def. Ex. 1 at 47-49.) Gresham was later promoted, and Ralph Buchanan ("Buchanan") became Plaintiff's immediate supervisor. After the promotion, Plaintiff's managerial chain of command in ascending order was Buchanan, Gresham, Ann Herm ("Herm"), and Pamela Reeves ("Reeves") (Def.'s Ex. 3 at 9.) Reeves was the final decision maker on all of the Hospital's adverse employment actions. *Id*.

In the summer of 2009, Buchanan filed a series of reports after patients complained about Plaintiff. (Def.'s Ex. 4 at 23; Ex. 7.) In July 2009, a patient reported Plaintiff's behavior towards him as not helpful and the patient requested another nurse. (Def.'s Ex. 7 at 1.) Buchanan filed similar reports in August and September. *Id*. at 2. Buchanan sent Plaintiff a memorandum titled "Written Counseling" in September of 2009. *Id*. at 4. The memorandum admonished Plaintiff for her behavior as reported by patients, and stated failure to comply with the memorandum's suggestions would result in discipline. *Id*.

In December of 2009, a female patient and Plaintiff reportedly had an altercation involving shoving and threats of physical violence. (Def.'s Ex. 8.) After the incident, that same patient saw Plaintiff and ran towards her, but slipped and fell as she approached Plaintiff. *Id*. The patient alleged Plaintiff kicked her and knocked her to the ground. Gresham proposed a

suspension of seven days for rude and disrespectful conduct. Reeves did not sustain the charge of rude and disrespectful conduct because no witnesses confirmed Plaintiff kicked the patient. *Id*. After this allegation, the Hospital placed Plaintiff in a front office away from patients. (Def.'s Mot. at 2.) Reeves declined to suspend Plaintiff, and reduced the proposed suspension to an admonishment.[1] (Pl.'s Ex. 6.)

In the spring of 2010, more patients reported incidences of improper conduct by Plaintiff. *Id*. at 4. The patients described Plaintiff as aggressive, antagonistic, and demeaning. *Id*. In May of 2010, Gresham proposed another seven-day suspension because of the complaints. *Id*. Although Gresham had proposed discipline for plaintiff, they remained friendly. (Def.'s Ex. 19.) In June of 2010, Buchanan witnessed Plaintiff and another nurse engaged in an argument in which Plaintiff appeared to be the aggressor. (Def.'s Ex. 24.)

On June 30, 2010, Plaintiff consulted with the Hospital's Equal Employment Opportunity ("EEO") counselor. (Def.'s Ex. 29.) Plaintiff alleged she was being subjected to a hostile work environment because of her gender. *Id*. Plaintiff had received a series of emails from Gresham, on her Veterans Affairs email account, that she deemed offensive. (Pl.'s Ex. 9.) Some of the emails were sexual in nature and depicted nude or partially nude people. (Def.'s Ex. 21.) One contained a photograph of a nude child.[2] *Id*. Plaintiff received these emails between January and June of 2010. *Id*. In this same period, Plaintiff and Gresham had many cell phone conversations that lasted longer than forty minutes. (Def.'s Ex. 1 at 52-3.) Plaintiff stated in her deposition that the two remained "civil" towards each other. *Id*. She filed a formal complaint of employment discrimination on August 4, 2010.

---

[1] Plaintiff's Exhibit 6 indicates this patient had complained about Plaintiff before.
[2] The Department of Veterans Affairs admonished Gresham for sending the picture on her work email account.

3

Later in August, Plaintiff received a three-day suspension for her conduct in June of 2010. (Def. Ex. 31.) Plaintiff challenged the suspension and informed Reeves she felt her managers were not following the Hospital's investigation policy. (Def.'s Ex. 34.) Reeves upheld the suspension, and Plaintiff added the suspension to her EEO complaint.

On November 28, 2012, Plaintiff arrived to work late. (Def.'s Mot. at 8.) She was not feeling well and her supervisor let her leave. *Id*. However, the Hospital originally deemed her AWOL that day. (Pl.'s Mot. at 6.) Gresham investigated the matter after Plaintiff contested the AWOL charge. Gresham confirmed Plaintiff had permission to leave. (Def.'s Ex. 32 at 13.) Gresham then approved the time off as paid sick leave and administrative leave. *Id*. at 14.

Plaintiff experienced stress because of the AWOL incident and other incidents of perceived harassment. (Pl.'s Mot. at 6.) Plaintiff took leave under the Family Medical Leave Act ("FMLA") on November 30, 2010 scheduled to return in February 2011. *Id*. On January 6, 2011, the Hospital informed Plaintiff via letter her FMLA paperwork was not properly completed and she needed to return to work. (Def.'s Ex. 43.) The missing information prevented the Hospital from processing her FMLA request. *Id*. The Hospital ordered her to return on January 10, 2011 or apply for leave. *Id*. The letter also stated she could administratively resign. *Id*. Plaintiff characterized this as an ultimatum demanding her return or resignation. (Pl.'s Ex. 18 & 19.) Plaintiff and her physician submitted the proper paperwork that allowed her to remain on leave until February. (Def.'s Mot. at 9.) In January, Plaintiff amended her EEO complaint to include the AWOL charge and this return to work order. *Id*.

In June 2011, an opportunity for nurses to travel to the Veterans Affairs Cincinnati facility arose. *Id*. at 10. Nurses would be chosen based on seniority, job performance, timeliness and attendance. (Pl.'s Ex. 25.) Gresham and another manager chose a female nurse with more

seniority than Plaintiff for the position. *Id*. Gresham also chose not to select a male nurse for the opportunity as well. (Def.'s Mot. at 10.)

On July 12, 2011, another patient complained about the way Plaintiff treated him. (Def.'s Ex. 50). Two days later, the Hospital reported Plaintiff was shouting at a patient telling him he could crawl or walk to the patient seclusion area after he bumped into another patient knocking him out of his wheelchair. (Def.'s Ex. 53).

On July 18, 2011, Plaintiff requested advanced annual leave. (Pl.'s Mot. at 8.) She was suffering from stress and anxiety, which she alleges caused a popped blood vessel in her eye. (Pl.'s Ex. 27.) Advanced annual leave is not the same as leave under the FMLA, which Plaintiff chose not to seek. (Def's Ex. 57 at 5-6.) Plaintiff's supervisor Buchanan had the authority to deny Plaintiff the leave and did so. Plaintiff's position was that only Reeves could deny such leave. (Pl.'s Ex. 30.) From July 18, 2011 to August 1, 2011, Plaintiff was not at work and not on FMLA leave. (Def's. Ex. 60 at 5-6.) Therefore, she was AWOL during that time. *Id*.

On July 12, 2011, Defendant alleges Plaintiff attempted to access a paper bin containing confidential patient information.[3] (Def.'s Mot. at 11.) On August 25, 2011, the Hospital reported Plaintiff had a conversation with a veteran about why he should not take methadone. (Def.'s Mot at 12.) Defendant alleges Plaintiff said methadone was "bad for black men and made by Hitler for his soldiers." *Id*. However, another nurse's report cast doubt about the exact content of the conversation. (Pl.'s Ex. 30.)

Later that month, Buchanan and Plaintiff also disagreed about the assignment of overtime work. (Def.'s Mot. at 13.) Buchanan claims he did not put her on a list of nurses who could

---

[3] Buchanan's reporting of the incident leaves the Court with the impression that the identity of the nurse who attempted to access the bin cannot be confirmed as Plaintiff.

work overtime on August 16, and Plaintiff alleges someone erased it. (Def.'s Ex. 60 at 10-13.) Plaintiff was able to work overtime that week after she voiced her concerns. *Id*.

On September 2, 2011, Gresham issued a letter proposing Plaintiff's discharge. When Buchanan delivered the letter to Plaintiff, she fainted. (Def.'s Mot at 13.) On November 17, 2011, Plaintiff filed a new EEO complaint. Reeves sustained the charges in the proposed discharge, and Plaintiff was discharged December 5, 2011. (Def.'s Mot. at 14.)

### III. Law and Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); see also *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48; see also *National Satellite Sports, Inc. v. Eliadis*, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B. Defendant's Motion for Summary Judgment**

Defendant argues that Plaintiff cannot establish that a hostile work environment was caused by intentional discrimination based on her gender. Defendant also argues Plaintiff cannot establish her complaints about the emails and filing the EEO complaints were the cause of her termination. Defendant correctly argues Plaintiff's 2010 suspension and ultimate termination were discrete acts. Therefore, Plaintiff cannot rely on them to support her hostile work environment claim.

Plaintiff must establish discrimination through direct or indirect/circumstantial evidence. Direct evidence is evidence, if believed, necessitates a finding that unlawful discrimination was "at least a motivating factor in the employer's actions." *Talley v. Bravo Pitino Rest., Ltd.*, 61

F.3d 1241, 1246 (6th Cir. 1995); *see Jacklyn v. Schering-Plough*, 176 F.3d 921, 926 (6th Cir. 1999). Indirect/circumstantial evidence is evidence that leads to a reasonable inference discrimination occurred. *Jacklyn,* 176 F.3d at 926. Plaintiff has the burden of establishing a prima facie case of discrimination through indirect evidence by meeting the *McDonnell-Douglas* burden-shifting test. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case for discrete acts of discrimination in the workplace, the employee must show: (1) they are a member of a protected class; (2) they suffered an adverse employment action; (3) they are qualified for their position; and (4) a similarly situated employee who is not a member of a protected class was treated differently or treated more favorably. *Id*. If the employee can establish a prima facie case, a presumption that the employer acted unlawfully arises. *Texas Dep't of Comm. Affairs v. Burdine*, 450 248, 254 (1981). Then, the burden shifts to the employer, who must offer a non-discriminatory reason for the action. *Id*. If the employer meets his burden, then the burden shifts back to the plaintiff to prove the employers offered reason was pretext. *Id*.

To establish a prima facie case of a gender-based hostile work environment claim, a plaintiff must demonstrate: that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her gender; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999); *see Barrett v. Whirlpool Corp*., 556 F.3d 502, 515 (6th Cir. 2009).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 814 (6th Cir. 2011). The defendant meets this

burden by "clearly set[ting] forth, through the introduction of admissible evidence," such reasons for the adverse employment action. *Id*. at 815. "If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr v. Hazel Park Sch. Dist*., 710 F.3d 668, 675 (6th Cir. 2013).

Retaliation claims have a different causation standard than claims of discrimination based on gender. *Univ. of Texas S.W. Med. Ctr. v. Nassar*, _ U.S. _, 133 S.Ct. 2517, 2534 (2013). To establish a prima facie case of retaliation, an employee must show that (1) he or she engaged in protected activity; (2) the defendant knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against the employee or plaintiff was subjected to a hostile work environment; and (4) there was a causal connection between the protected activity and the adverse employment action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir.2008). Unlike gender based discrimination claims, retaliation claims must establish a "but-for" causation. *Nassar*, 133 S.Ct. 2535. A plaintiff's retaliation claim will fail unless they are able to show the employer would not have initiated an adverse employment action "but-for a design to retaliate." *Id*. If plaintiff can establish the prima facie case, the burden shifts to the employer to establish a non-retaliatory reason for the action. *DiCarlo v. Potter*, 358 F.3d 408, 420 (2004). If defendant meets their burden, plaintiff must show the reasons defendant offered were pretext. *Id.*

### i. Discrete Acts of Discrimination

Although the Plaintiff did not plead discrete acts, the Court will address these acts because it must look to the substance and not the form of Plaintiff's pleadings. *See Drown v. ASD Computing Ctr.*, 519 F.Supp. 1096, 1110 (S.D. Ohio 1981) (holding courts are entitled to

9

consider legal theories presented by the evidence).  Defendant addresses the September 2010 suspension and ultimate termination as discrete acts in its motion and Plaintiff does so in her reply.

Both parties agree Plaintiff is a member of a protected class who has suffered two adverse employment actions, and is qualified for her position.  Parties disagree over whether plaintiff is similarly situated to the male nurse assistants with whom she compares herself.  Similarly situated employees, also called comparables, must be similarly situated in all relevant aspects.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  Proper comparables in a disciplinary setting must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*.

Plaintiff and her comparables had different managers and job titles, however, Reeves was the final decision maker on any adverse employment decisions they would have faced.  Plaintiff argues male nurse assistants were treated more favorably, which satisfies the fourth element of the *McDonnell-Douglas* burden shifting test.  Plaintiff named three male nurse assistants who she argues were treated differently.  (Def's Ex. 32 at 29-32.)  She also mentions six other unnamed males who were charged with patient misconduct or being AWOL.  (Pl.'s Ex. 51).  The Hospital suspended one for ten days, and gave the other an admonishment. *Id*.  Although these comparables have complaints of patient mistreatment or being AWOL, none of them has a combination of being AWOL and reported patient misconduct.  Furthermore, none of the male nurse assistants seem to have the long history of patient complaints and difficulties handling

leave time.  The Court finds that these facts, even when viewed in a light most favorable to the Plaintiff, show the Plaintiff did not engage in the same behavior.  Plaintiff's actions are a combination of different types of misconduct, but her comparables appear to have engaged in one form of misconduct or the other.

### ii.     Hostile Work Environment Based on Gender

According to Plaintiff, the harassment began in 2010 in the form of emails.  (Compl. ¶ 10).  Defendant concedes that Plaintiff is a member of a protected class.  Defendant argues that Plaintiff's allegations are not related to her gender because they are not sexual in nature.  (Def.'s Mot. at 21).  However, this is a narrow view of gender-based discrimination.  *Williams v General Motors Corp.*, 187 F.3d 553, 565 (1999); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 797 (2000) (Clay, J., concurring in part and dissenting in part).  If the employers conduct is not sexual in nature, the employee must show that but for their gender, there would have been no harassment.  *Id*.; see *Warf v. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013).

Plaintiff's suspension and termination are discrete acts and cannot form part of her hostile work environment claim because they are not continual in nature.  Furthermore, she opted to challenge them in her grievance with the Department of Veteran's Affairs.  *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989) (holding doctrine of election of remedies applies to government employees because Congress has given them a statute under which they can vindicate their right to be free from workplace discrimination, 5 U.S.C. § 7121(d)).

Plaintiff argues the grievance does not prohibit these instances from being part of her claim because the grievance was not a union grievance.  (Pl.'s Resp. at 24-25.)  This argument is misguided because union grievances vindicate contractual rights and do not affect ones statutory

11

rights. *Smith*, 869 F.2d at 1005. Section 7121(d) requires federal employees to choose one method to vindicate their rights under statute, not two methods. *Id*. By filing the non-union administrative grievance for her termination and suspension, Plaintiff chose one of two statutory remedies to vindicate her right to be free from workplace discrimination. Plaintiff cannot raise these issues again under Title VII in an attempt to make the same arguments in a different forum. Plaintiff's argument would have the Court ignore the doctrine of election of remedies.

The remaining allegations are not supported by the "but-for" measure that applies to allegations of gender based discrimination that is not sexual in nature. Plaintiff's Rule 56(c) materials do not show that but for her gender, she would not have received the emails; been classified as AWOL in November 2010, January 2011 and July/August 2011; been denied FMLA leave; been denied overtime, and denied the training opportunity in Cincinnati. Furthermore, Gresham stopped sending the emails when Plaintiff complained about them to the Hospital; the November 2010 AWOL incident was corrected; Plaintiff was given an opportunity to reapply for and received FMLA leave; and lastly, a woman was chosen for the Cincinnati training program. Ultimately, Plaintiff cannot show that her receipt of these emails, subsequent admonishments, and termination "but-for" her gender.

Even if Plaintiff could show her gender was the reason for alleged harassment, the Hospital's conduct does not meet the standard for severe or pervasive harassment. A hostile work environment consists of "repeated conduct" that makes the employee's workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to change the conditions of their employment creating an abusive working environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002). An objective and subjective test applies to the employer's conduct. *Randolph v. Ohio Dep't of*

*Youth Servs., Inc.*, 453 F.3d 724, 733 (6th Cir. 2006). The court examines the totality of the circumstances in order to determine if the environment is hostile. *Barrett*, 556 F.3d at 515. It analyzes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or merely offensive; and whether it unreasonably interferes with the employee's work performance. *Id*. The conduct must be so severe or pervasive that it is offensive as to constitute a work environment that a reasonable person would find abusive or hostile and that the victim finds abusive or hostile. *Randolph*, 453 F.3d at 733. Additionally, the victim must subjectively perceive an abusive environment. *Williams*, 187 F.2d at 566.

The Hospital's conduct is not severe and pervasive. These acts were addressed and rectified by the Hospital so as to not affect Plaintiff's job performance. Plaintiff's discharge was not over her performance. At no time, was the quality of medical care Plaintiff provided ever questioned. Rather, she was discharged for a series of patient complaints relating to the way in which she spoke to and interacted patients.

Even if Plaintiffs treatment was severe and pervasive and because of her gender, the Hospital has presented enough evidence to show that Plaintiff had continual problems interacting with patients and adhering to proper procedure regarding leave time.

The Court finds that Plaintiff has failed to satisfy critical elements of the prima facie case for a hostile work environment based on her gender because she cannot prove the Hospital's conduct was based on her gender.

### iii.    Retaliation for Engaging in Protected Conduct

Defendant argues Plaintiff cannot make a prima facie case for retaliation. Plaintiff alleges Gresham retaliated against her after she reported Gresham's conduct and filed an EEO grievance. Defendant concedes Plaintiff can meet the first two elements of the prima facie case,

she engaged in and Defendant was aware of her protected activity.  Defendant argues Plaintiff cannot show an adverse employment action was taken against Plaintiff or she was subjected to a hostile work environment because she engaged in a protected activity.

For the reasons the Court already discussed in its analysis of Plaintiff's hostile work environment claim, Plaintiff cannot demonstrate she was subjected to severe or pervasive retaliatory harassment or adverse employment actions.  Plaintiff's success, under *Nassar*, depends on whether she can bring forward evidence that shows the denial of the Cincinnati training opportunity, July/August 2011 AWOL incident, the suspension and her termination were the result of an effort to retaliate against her for complaining about Gresham's emails and filing an EEO complaint.

The thrust of Plaintiff's argument is that after she made complaints and filed an EEO claim, those in her managerial chain of command began to punish her.  Proximity in time is insufficient to establish a causal link.  *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007).  Even if the temporal link was sufficient, the Defendant can show there were legitimate non-retaliatory reasons for terminating Plaintiff.  Defendant's 56(c) materials have revealed numerous complaints from patients and staff about Plaintiff's behavior.  These materials show that Plaintiff was consistently demeaning and rude to patients and had trouble properly following leave policy procedures.  The Defendant has come forward with non-retaliatory reasons for the Hospital's actions.  Therefore, the protected activity was not the "but-for" cause of the Hospital's actions.

## IV.  Conclusion

For the aforementioned reasons, the Court GRANTS Defendant's Amended Motion for Summary Judgment [#50].  This Order DISMISSES this case.

IT IS SO ORDERED.   /s/Gershwin a. Drain  
Gershwin A. Drain  
United States District Court Judge  

December 23, 2013